160 N.J. Super. 559 (1978)
390 A.2d 684
BARCON ASSOCIATES, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
TRI-COUNTY ASPHALT CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 26, 1978.
*562 Mr. J. William Barba for plaintiff (Messrs. Shanley & Fisher, attorneys).
Mr. Irwin I. Kimmelman for defendant (Messrs. Kimmelman, Wolff & Samson, attorneys).
STANTON, J.C.C. (temporarily assigned).
This is a summary action to confirm an arbitration award. N.J.S.A. 2A:24-7; R. 4:67. By way of counterclaim defendant seeks to have the award vacated because of the "evident partiality" of one of the arbitrators. N.J.S.A. 2A:24-8(b). Because of certain factual issues raised by the pleadings and moving papers, limited discovery has been allowed by special order of the court, and live proofs have been presented in open *563 court concerning business dealings between the arbitrators and the parties and concerning the knowledge of the arbitrators and parties about those dealings. No proofs or arguments have been presented concerning the merits of the arbitration award.
I have decided to vacate the award because of the "evident partiality" of Vincent A. Spatz, one of the three arbitrators.
Barcon was the general contractor of a construction project at Chester Springs Shopping Center in Chester, New Jersey. It entered into a written subcontract for certain work on the project with Tri-County. The subcontract contained a provision that any dispute under the contract would be submitted to three arbitrators for decision. Each party would designate one arbitrator, and the two arbitrators so chosen would designate the third arbitrator. Any dispute would be determined by majority vote of the arbitrators. A dispute did arise under the subcontract. Barcon designated Vincent A. Spatz as an arbitrator, Tri-County designated Gareld R. Gray as an arbitrator, and Spatz and Gray designated Allan Arnowitz as the third arbitrator.
The arbitrators held hearings on January 17, 18 and 19, 1977, and on March 12, 13 and 14, 1977. On December 9, 1977 the arbitrators rendered an award favorable to Barcon. During the period between the first arbitration hearing and the rendering of the award, arbitrator Spatz had certain business dealings with Barcon. The existence of those dealings was not known to the other arbitrators or to Tri-County until after the award was rendered.
One of the dealings involved paving work done for Barcon by a corporation known as V.A. Spatz Excavating and Paving Co., of which Spatz was the president and principal stockholder. The work in question consisted of widening a public road immediately adjacent to the Chester Springs Shopping Center  the same Chester Springs Shopping Center which was the site of the Tri-County work which gave rise to the arbitration dispute. Spatz' corporation had completed this work prior to the start of the arbitration hearings, *564 and there was no dispute as to the quality of the work or the sum to be paid for it. However, at the time the arbitration proceedings began in January 1977, the Spatz corporation had not been paid for this work, although the work had been completed in August 1976. The amount owed by Barcon for this work was $26,763.15 on the date of the first arbitration hearing.
In February 1977 Barcon paid $3,000 against this bill. On March 1, 1977 Spatz sent to the president of Barcon a follow-up bill reflecting a balance due of $24,527.05. On that bill, Spatz wrote, in hand: "Joe  Since August!!! Please Vin." It should be noted that March 1, 1977 was after the first three arbitration hearings had been held and prior to the holding of the second three arbitration hearings. Following the March 1, 1977 reminder bill, Barcon paid the Spatz corporation $3,000 in March and $10,000 in April. No further payments were made prior to the rendering of the award on December 9, 1977. Thus, after making allowance for interest which was accruing on the bill monthly, Barcon remained indebted to the Spatz corporation in the amount of approximately $13,000 when the award was rendered.
The second business dealing in question involved a subcontract between Quail Ridge Corp. and V.A. Spatz Excavating and Paving Co. Under it the Spatz corporation was to do extensive paving work at the site of a residential apartment complex known as Quail Ridge in Washington Township, New Jersey. At all relevant times, Quail Ridge Corp. has been owned and controlled by the same persons who own and control Barcon.
The Spatz corporation had done work on the Quail Ridge project at various times prior to the start of the arbitration proceedings. The project is an ongoing one, and there still remains about $30,000 worth of work to be done by the Spatz corporation at Quail Ridge. At the hearing before me, Spatz indicated that his corporation had received approximately $400,000 over the years on account of work done at Quail Ridge. Payment records submitted to me show that the Spatz *565 corporation received $65,602.68 from Quail Ridge Corp. while the arbitration proceedings were pending before the arbitrators.
Spatz has testified that the annual gross earnings of his corporation have been "several million dollars" in recent times. Aside from the fact that the sums involved in the Chester Springs and Quail Ridge projects are significant in general terms, I am satisfied that they are significant in terms of their relationship to the gross earnings of the Spatz corporation.
Arbitration in this State is fundamentally governed by the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 et seq. Judicial review of arbitrators' decisions is severely limited by the terms of N.J.S.A. 2A:24-8 and N.J.S.A. 2A:24-9 which set up the exclusive grounds upon which arbitrators' awards can be vacated, modified or corrected. An arbitrator's decision cannot be judicially altered because of a mistake of law or fact made by the arbitrator, and, broadly speaking, judicial review of an arbitrator's award is much more limited in scope than is appellate court review of a trial court decision. See Stanton, "Protection Against Uninsured Motorists in New Jersey," 3 Seton Hall L. Rev. 19, 35-36 (1971). When an arbitrator's award is presented to a court for confirmation and enforcement, the presumption is in favor of the award's validity, and the party opposing confirmation of the award has the burden of proof. International Brotherhood of Teamsters, etc., Local 560 v. Bergen-Hudson Roofing Supply Co., 159 N.J. Super. 313 (Ch. Div. 1978).
The sole statutory basis for opposing confirmation of the award in the present case is found in N.J.S.A. 2A:24-8:
The court shall vacate the award in any of the following cases:

* * * * * * * *
b. Where there was * * * evident partiality * * * in the arbitrators, or any thereof; * * *.
Tri-County, the party opposing confirmation of the award, does not claim that arbitrator Spatz manifested any partiality *566 by his actions, omissions or demeanor during the course of the arbitration proceedings. Nor does Tri-County claim that any partiality is evident on the face of the award itself. Rather, the thrust of Tri-County's argument in this case is that the mere existence of the business relationships and dealings between Spatz and Barcon (including the related corporation, Quail Ridge) is so strongly and objectively subgestive of the likelihood of favoritism or of dependence that it is incompatible with the concept that arbitration necessarily entails impartial decision making by arbitrators who are not beholden to any of the parties to the proceedings.
There are no controlling New Jersey cases, and there are no New Jersey cases which are even fairly closely relevant. The recent trial court decision in International Brotherhood of Teamsters, etc., Local 560 v. Bergen-Hudson Roofing Supply Co., supra, sets forth some of the broad principles involved here, but the facts in that case are so different from the facts in the present case that the analysis of the court in that decision is not really helpful here. Certain out-of-state decisions are more pertinent in terms of their analysis of facts and issues. Those cases have been discussed by the attorneys in this case and will be discussed below.
Plaintiff Barcon points out that the present arbitration is private in the sense that it was not conducted under the auspices of the American Arbitration Association or of any other organization. In that connection it must be noted that § 18 of the rules of the American Arbitration Association would clearly have imposed upon arbitrator Spatz the affirmative duty to disclose the business dealings noted above. Barcon relies heavily upon the reasoning set forth in Astoria Medical Group v. Health Ins. Plan of Greater New York, 11 N.Y.2d 128, 227 N.Y.S.2d 401, 182 N.E.2d 85 (Ct. App. 1962). That case, like the present one, involved a private arbitration in which each party designated an arbitrator, with the arbitrators so designated then designating the third arbitrator. One of the parties to the *567 arbitration, a corporation, designated a member of its own board of directors as an arbitrator.
In Astoria Medical Group the New York Court of Appeals upheld the right of a corporation to appoint a member of its own board of directors to sit as one of three arbitrators in a proceeding to which the corporation was a party. In reaching this result the court pointed to contractual language giving each party the broad right (not qualified by any language of limitation) to appoint one arbitrator and to statutory language providing that "If, in the contract for arbitration * * * provision be made for a method of naming or appointing an arbitrator or arbitrators * * * such method shall be followed." N.Y. Civ. Prac. Act § 1452. Barcon correctly points out that the language in the Barcon/Tri-County contract is equivalent to that in Astoria Medical Group and that the New Jersey Arbitration Act contains a provision virtually identical to § 1452 of New York's Civil Practice Act. See N.J.S.A. 2A:24-5. Barcon urges that this court should follow the lead of the New York Court of Appeals in recognizing that parties to an arbitration contract may agree upon any kind of arbitration proceeding they jointly choose, and, once they have agreed, the court's function is to enforce the benefits and burdens of the proceeding upon which they have agreed.
The trouble with the decision in Astoria Medical Group (and with Barcon's argument) is that it focuses too narrowly and too simply upon bare statutory language permitting parties to select their own method of arbitration. It fails to reflect the broad purpose and the inherent nature of an arbitration proceeding. Contrary to the somewhat commercial analysis of the majority decision in Astoria Medical Group, to the extent that arbitration is to be judicially enforced under pertinent statutory schemes, it is always and necessarily quasi-judicial in nature. This means that an arbitrator must always be held to minimally acceptable standards of impartiality and independence. He must decide the arbitration proceeding on the basis of the evidence *568 presented during the proceeding, not on the basis of his prejudice for or against any party to the arbitration. This, in turn, means that the parties to the arbitration, and the world in general, must have some reasonable basis for believing that the arbitrator can and will act impartially.
I am forced to conclude that Astoria Medical Group was wrongly decided, not only in terms of its particular facts but also in terms of its broad analysis of the relevant concepts and principles. Perhaps the most fitting comment upon the majority opinion in Astoria Medical Group is this language from the dissenting opinion filed in that case by Chief Judge Desmond:
If Dr. Baehr can be an arbitrator when his own corporation is a party, then an individual party can name himself as his own arbitrator-judge and the whole affair becomes a cynical travesty of the arbitral process, "calculated to bring the system of enforced arbitrations into disrepute" (citing cases). [11 N.Y.2d at 139, 227 N.Y.S.2d at 409, 182 N.E.2d at 91].
Much more persuasive is the analysis of the New York Court of Appeals in J.P. Stevens & Co., Inc. v. Rytex Corp., 34 N.Y. 2d 123, 356 N.Y.S.2d 278, 312 N.E.2d 466 (Ct. App. 1974). It is true that in that case the court was dealing with an American Arbitration Association proceeding with its § 18 requirement of disclosure by the arbitrator. However, in deciding to vacate an award because of the bias of two arbitrators, the court stressed the general nature of arbitration and stated that "the very nature of the arbitrator's quasi-judicial function, particularly since it is subject to only limited judicial review, demands no less a duty to disclose than would be expected of a Judge" (citing cases). I note that, in my judgment, the business relationships between the arbitrators and one of the parties in J.P. Stevens & Co., Inc. v. Rytex Corp. were less significant than those between arbitrator Spatz and Barcon and its related corporation in the present case.
*569 Very persuasive to me is the reasoning of the United States Supreme Court in Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). That case involved an arbitration agreement calling for private arbitration in which each party designated one arbitrator, with the two arbitrators so designated then designating the third arbitrator. The case dealt with the alleged bias of the third arbitrator and involved a federal arbitration statute containing an "evident partiality" provision virtually identical to that contained in N.J.S.A. 2A:24-8(b). The third arbitrator was a consulting engineer. He had performed consulting services for one of the parties to the arbitration from time to time at irregular intervals over a period of four or five years. There had been no dealings between the arbitrator and the party for about a year immediately preceding the arbitration. However, the consulting services had involved work on the projects which were involved in the arbitration proceedings. Over the years the arbitrator had received fees from the party of about $12,000, which amounted to a very small part of his total income.
The Supreme Court held that the award must be set aside because of the past business relationships between the arbitrator and one of the parties. It reached this result under the "evident partiality" section of the federal statute, despite the absence of any allegation or proof of any actually biased conduct. The court noted that § 18 of the rules of the American Arbitration Association (the rule requiring disclosure) did not control, but it thought that the rule stated a significant standard. The court also cited, as illustrative of an applicable standard, Canon 33 of the old Canons of Judicial Ethics. The court then went on to say:
This rule of arbitration and this canon of judicial ethics rest on premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but must also avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies *570 to arbitration boards that might reasonably be thought biased against one litigant and favorable to another. [393 U.S. at 150, 89 S.Ct. at 340]
Barcon seeks to distinguish Commonwealth Coatings Corp. on the basis that it deals with the third arbitrator, one not designated by the parties, whereas arbitrator Spatz was a party-designated arbitrator. In that regard Barcon points to the majority decision in Astoria Medical Group v. Health Ins. Plan of Greater New York, supra, which clearly contemplates that a party-designated arbitrator will be a "representative" of the party designating him and will be somewhat partisan. I would agree with plaintiff Barcon that there is some difference in the expectations that men reasonably have of the attitude of a party-designated arbitrator as contrasted to a neutrally selected arbitrator. The relevant legal standard should reflect that difference in expectation.
I think that reasonable men would expect a party-designated arbitrator to have a general cast of mind broadly favorable to the position of the designating party. It is to be expected that the designating party would be thinking of this broadly favorable predisposition of mind in appointing the arbitrator. Reasonable men might also expect the arbitrator and the party designating him to have had past business relationships of a mutually satisfactory nature. But the kind of broadly favorable predisposition of mind indicated above cannot be permitted to become bias or to degenerate into partisanship, nor can objective appearances of bias or partisanship be permitted. It seems to me that the line between the acceptable general predisposition of attitude permitted in the case of a party-designated arbitrator and impermissible bias or partisanship (or the appearance thereof) is crossed when the arbitrator is involved in active and significant business dealings with a party during the pendency of the arbitration proceedings. The idea of biased or partisan arbitration is conceptually inadmissible, and the *571 law simply cannot allow any judicially enforceable arbitration proceeding to be anything other than an impartial proceeding which has appropriate appearances of impartiality.
There is no proof before me that arbitrator Spatz actually acted in a biased or partisan way during these arbitration proceedings. It is possible that, in terms of his actual individual psychology, and in terms of his actual strength of character and intellect, his required independence and impartiality were not compromised by his business dealings with Barcon (and its related corporation, Quail Ridge) which were taking place at the very time of his functioning as an arbitrator. However, it seems clear to me that most men, in looking at the ongoing business dealings which existed during this arbitration proceeding, would, without taking a cynical view of human nature, reasonably fear that many men situated as was arbitrator Spatz would be conscious of significant personal economic reasons for not rendering an award unfavorable to Barcon. In short, the objective circumstances were such that reasonable men would perceive a relatively high risk of biased and partisan decision making on the part of arbitrator Spatz. The appearances inherent in this situation fatally compromised the independence and impartiality required of arbitrator Spatz. I conclude that there was "evident partiality" of an arbitrator in this case within the meaning of N.J.S.A. 2A: 24-8(b). Accordingly, there will be a judgment vacating the award rendered by the arbitrators.
Fundamental to my decision in this case is the view that the New Jersey Arbitration Act mandates that every arbitrator act in a basically independent, unbiased and impartial fashion. Although, as previously noted, there is no New Jersey authority closely in point, I believe that the general approach taken by our Supreme Court in Fred J. Brotherton, Inc.. v. Kreielsheimer, 8 N.J. 66 (1951), makes it clear that the concept of a representative or partisan arbitrator apparently recognized by the New York Court of *572 Appeals in Astoria Medical Group v. Health Ins. Plan of Greater New York, supra, is not recognized in New Jersey and is not acceptable here.
At the beginning of this opinion I stated that the existence of the ongoing business relationships between Spatz and Barcon was not known to the other arbitrators or to defendant Tri-County until after the award was rendered. This is an important finding because had Tri-County known during the pendency of the arbitration proceedings of the dealings in question, and had Tri-County then failed to make timely objection, rules of waiver, consent or estoppel might come into operation against Tri-County. In view of the fairly extensive testimony relating to that issue which was presented to me, I believe that I should say something further about it.
In his testimony before me, Spatz did not claim that he ever told the other arbitrators or any employee, officer or representative of Tri-County of the $26,763.15 owed to him by Barcon for work in the vicinity of Chester Springs Shopping Center, of the ongoing work at Quail Ridge, or of the $65,602.68 paid to the Spatz corporation for Quail Ridge work during the pendency of the arbitration proceedings. The other two arbitrators testified that they knew nothing of those matters during the pendency of the arbitration proceedings. Several witnesses, including the president of Barcon, testified on behalf of Barcon, and none of them claimed to have informed any arbitrator or any officer, employee or representative of Tri-County about any of the dealings in question. With one exception, all of the officers, employees and representatives of Tri-County who might have been expected to have knowledge of any Spatz/Barcon dealings were called to testify before me, and all denied any knowledge, prior to the rendering of the award, of any of the dealings in question.
The only representative of Tri-County who might have known something about the dealings in question who was not called was Charles Malovany, one of two attorneys representing *573 Tri-County during the arbitration proceedings. Malovany was not called because he died prior to the institution of this action. However, Mark Rochkind, a former partner of Malovany who was the second lawyer working for Tri-County on the arbitration proceeding, did testify. Rochkind testified that he (Rochkind) did not know of the dealings in question. He also testified about his professional relationship with Malovany and that Malovany never gave any indication of knowing anything about the Spatz/Barcon dealings in question. The nature of the relationship between Rochkind and Malovany was such that Malovany would almost certainly have shared any knowledge of the Spatz/Barcon dealings with Rochkind. I find that he did not share any knowledge of the dealings in question with Rochkind, and I draw the inference that he did not have any such knowledge.
I believe all of the testimony of all of Tri-County's witnesses and of the two arbitrators, besides Spatz, about the state of their knowledge. I also believe the testimony of Spatz and of the Barcon witnesses, but nothing in that testimony supports any inference adverse to Tri-County's claim and the other arbitrators' claims of lack of knowledge. I find that no one other than Barcon and Spatz knew of the dealings in question prior to the rendering of the award.
Barcon has argued that, despite lack of actual knowledge, Tri-County should have known of, or is chargeable with notice of, at least some of the dealings in question. That argument is based, in part, upon the fact that Stephen Babus, the superintendent of Tri-County's asphalt production plants, had observed equipment owned by the Spatz corporation parked at the Chester Springs Shopping Center site while construction work was in progress. However, the testimony in this case clearly establishes that Babus was a middle-level operational manager (not a general business executive) who, prior to the rendering of the award, did not even know that Tri-County and Barcon were parties to an arbitration dispute and did not know that Spatz was an arbitrator. *574 Purely by chance, after the award was rendered, Babus learned of the arbitration and that Spatz was an arbitrator, whereupon he informed the president of Tri-County of his prior observation of Spatz equipment at the shopping center site. This led the president to order further inquiries about Spatz/Barcon dealings.
Barcon bases part of its argument that Tri-County is chargeable with notice of at least some of the dealings in question upon certain facts possibly known to Martin Tucker, a sales manager employed by Tri-County. Spatz testified that he had had business and social relations with Tucker over many years while Tucker was employed by Tri-County. Spatz said he thought Tucker knew of his role as an arbitrator and of some of the dealings in question. Tucker testified that he knew vaguely of some of the dealings between Spatz and Barcon or Quail Ridge, but that he did not know anything about the arbitration while it was pending, and he did not know that Spatz was an arbitrator in the proceeding until after the award was rendered. I believe Tucker's testimony.
Although there is a broad rule to the effect that notice to an employee of a corporation is notice to the corporation, that rule is not applicable to the knowledge possessed by Babus and Tucker in this case. It seems to me that that rule can fairly operate only where the corporate employee has some functional responsibility with respect to the knowledge or notice. At the very least, the knowledge or notice has to have a significance which the employee could be reasonably expected to perceive. Babus and Tucker had no knowledge of the arbitration or of Spatz' role in it. There was no reason for them to know anything about the arbitration. Consequently, anything they happened to know about Spatz/Barcon or Spatz/Quail Ridge relationships would have no significance to them and could not reasonably be expected to have any significance to them. Nothing that they knew of the dealings in question is chargeable in any sense to Tri-County.
*575 The notice argument is also based in part upon the fact that, at the start of the arbitration proceedings, Rochkind and Malovany knew that Spatz had had business dealings with Barcon or related corporations in the past. Of course, this knowledge of Rochkind and Malovany is to be imputed to Tri-County. In light of Barcon's designation of Spatz, in light of the nature of Spatz' business, in light of the nature of Barcon's business, and in light of the structure and organization of the construction industry in northern New Jersey, there was nothing unusual about the fact that Spatz had past business dealings with Barcon or a related corporation. I do not think that the fact of past dealings should have prompted Rochkind and Malovany to inquire about possible present dealings. On the contrary, the general business experience, intelligence and sophistication of Spatz were such that Tri-County's lawyers could reasonably expect him to disclose (without being questioned) any present business dealings with Barcon or a related corporation. I conclude that Tri-County is not chargeable with any knowledge or notice, prior to the rendering of the award, of any of the dealings in question.
Barcon has made some point of the fact that two of the three arbitrators, at some point in the past, had some business dealings with one or both of the parties. Particular stress has been placed upon the fact that during 1976 and 1977 the Spatz corporation purchased $320,874.05 worth of paving materials from Tri-County (thus, presumably, offsetting any bias in favor of Barcon). I find these other relationships to be without significance so far as this arbitration proceeding is concerned. With respect to past relationships, the nature of the arbitrators' qualifications and the structure and organization of the construction industry are such that it was reasonably to be expected by all persons involved that such relationships would have existed. So far as purchases of paving materials from Tri-County are concerned, the testimony in this case and the inherent economic probabilities of the situation satisfy me that such purchases *576 would not especially benefit the buyer or cause the buyer to have any sense of gratitude or obligation to the seller. The purchases would not affect, and would not reasonably be perceived by anyone as affecting, the independence or impartiality of the buyer. On the contrary, any such effect would be on the seller, and, in the context of this case, such an effect would not be significant.
There will be a judgment vacating the award. No costs.