859 A.2d 742 (2004)
372 N.J. Super. 503
Gary DEL PIANO, Plaintiff-Respondent,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH INC., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 2004.
Decided November 3, 2004.
*743 S. Elaine McChesney (Bingham McCutchen), Boston, MA, of the Massachusetts bar, admitted pro hac vice, argued the cause for appellant (Bressler, Amery & Ross attorneys; Dominick F. Evangelista and Daniel T. Kopec of counsel, Ms. McChesney and Corin R. Swift of the Massachusetts bar, admitted pro hac vice, on the brief).
Anthony J. Del Piano argued the cause for respondent.
Before Judges WEFING, FALL and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
Both Federal and State law provide, among the statutorily limited grounds upon which an arbitrator's award can be vacated, that such can occur "[w]here there was evident partiality ... in the arbitrators." See 9 U.S.C.A. § 10(a)(2); N.J.S.A. 2A:24-8b.[1] The issue presented *744 to us in this appeal is whether such evident partiality was demonstrated in this case. The trial court found that it was. We reverse.
Commencing in December 1999, plaintiff Gary Del Piano made a series of 1,000-share purchases of stock in Internet Capital Group (ICGE), eventually accumulating 14,000 shares in the company. The purchases were made through the brokerage unit of defendant Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch), and were initially recommended by its employee, Thomas Bishop, a broker. During the period of Del Piano's investments, the stock precipitously declined in value. Del Piano finally sold his accumulated shares in February 2001 at a price of eighteen cents per share, for a loss of $429,000.
On June 25, 2001, Del Piano filed a claim against Merrill Lynch and Bishop with the National Association of Securities Dealers (NASD), asserting the unsuitability of Bishop's recommendations, broker negligence and fraud. A panel of three arbitrators was selected by the parties following disclosure and review of their credentials. Among them was industry representative Joseph Guarino, Jr. A three-day arbitration hearing then ensued, commencing on November 5, 2002, that resulted in a unanimous decision in favor of Merrill Lynch and its broker. Del Piano's claims were dismissed in their entirety.
On January 2, 2003, Del Piano filed a complaint in the Superior Court, together with a motion to vacate the arbitration award on the ground that the panel had failed to consider certain evidence. The motion was later amended to include a claim of alleged conflict of interest on the part of arbitrator Guarino arising from the fact that Deutsche Bank had been a co-underwriter with Merrill Lynch and others in the initial public offering (IPO) of ICGE stock and had been fined, along with Merrill Lynch and other companies, following investigations by New York Attorney General Eliot Spitzer of conflict of interest in the conduct of the various companies' stock analysts. As stated in a letter by plaintiff's counsel to the court, dated February 5, 2003:
Before, during and after the relevant time period, Mr. Guarino worked (and still works) for Deutsche Bank as the Director (and former Vice President) of Compliance in the bank's Private Banking section. Deutsche Bank was Merrill Lynch's Co-Lead Underwriter for ICGEthe stock at issue in this lawsuit and was fined $50 million by New York State Attorney General Spitzer in the same investigation in which Mr. Spitzer fined Merrill Lynch.... Yet, at the arbitration, Mr. Guarino expressly represented that neither he nor Deutsche Bank had a relationship with Merrill Lynch.
Merrill Lynch filed a cross-motion to confirm the arbitration award and to dismiss Del Piano's complaint, which had been amended to assert causes of action against two of Merrill Lynch's analysts.
The motions were argued orally. At the conclusion, the court ruled that the disclosures made by Guarino regarding his employment background were insufficient to permit Del Piano to make an informed decision as to whether or not Guarino would be a fair and impartial member of the arbitration panel. "[T]here's no indication of anything asked or anything volunteered regarding the specific relationship regarding the particular stock which was underwritten by the Deutsch Bank andtouted by Merrill Lynch." As a consequence, the trial judge set aside the *745 arbitration award and permitted Del Piano to proceed with a de novo arbitration.
Merrill Lynch then contacted Guarino through the NASD and, armed with his affidavit attesting to a lack of knowledge of any involvement by Deutsche Bank in the IPO, of any personal financial gain from Merrill Lynch's transactions on behalf of Del Piano or of any financial gain to Deutsche Bank, and of any insider knowledge of the Spitzer investigations, sought reconsideration. However, the motion judge did not find Guarino's sworn statements to be "dispositive of the issue of whether or not there should have been further disclosure, or whether it affects upon the impartiality of Mr. Guarino." Merrill Lynch's motion was denied.
On appeal, Merrill Lynch argues that the motion judge committed legal error in vacating the arbitration award in the absence of any evidence of "evident partiality." Within that argument, Merrill Lynch contends that the judge erred in basing his decision on "mere nondisclosure"; that his determination was erroneously based on an "appearance of impropriety"; and that the judge committed error in vacating the award in the absence of clear and convincing evidence of specific facts establishing a substantial relationship between Guarino and Merrill Lynch. It argues additionally that the judge committed error in vacating the award when Del Piano had in his possession all necessary facts at the time of the arbitration and raised no objection to Guarino's service as an arbitrator. As a final matter, Merrill Lynch argues that the court committed error in failing to confirm the arbitration award and to dismiss Del Piano's amended complaint. Del Piano, in turn, argues that the motion judge's determination was correct under New Jersey law.

I.
Because the matter at issue is legal in nature, our review of the motion judge's decision is plenary. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-8, 115 S.Ct. 1920, 1926, 131 L. Ed.2d 985, 995-96 (1995) (review of arbitration award requires no special standard; findings of fact must be accepted if not clearly erroneous and questions of law are decided de novo). See also Manalapan Realty v. Twp. Comm., of the Twp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.")
The issue of what law applies to this dispute is a more complex one. The arbitration was conducted pursuant to the NASD Code of Arbitration Procedure, which provides in § 19330(a) that an award may be entered as a judgment in any court of competent jurisdiction and, in § 19330(b), that unless "applicable law" directs otherwise, the award is final. Because the arbitration concerned a "transaction involving commerce," it is clear that the Federal Arbitration Act (FAA) applied to it. See 9 U.S.C.A. § 2. If the issue within the arbitration concerned the right to arbitrate, the FAA would preempt any state statute that disfavored arbitration agreements. Martindale v. Sandvik, Inc., 173 N.J. 76, 83-84, 800 A.2d 872 (2002) ("Pursuant to its substantive power to regulate interstate commerce, Congress enacted the Federal Arbitration Act ... to abrogate the then-existing common law rule disfavoring arbitration agreements `and to place arbitration agreements upon the same footing as other contracts.'") (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26, 36 (1991)). See also Leodori v. CIGNA Corp., 175 N.J. 293, *746 302, 814 A.2d 1098 (2003). However, the right to arbitrate is not at issue. Moreover, New Jersey law does not limit that right, and thus is congruent with federal law in this regard.
"Although it is firmly established that the FAA preempts state laws that invalidate arbitration agreements, the FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles; therefore, an arbitration clause may be invalidated `upon such grounds as exist at law or in equity for the revocation of any contract.'" Martindale, supra, 173 N.J. at 85, 800 A.2d 872 (quoting 9 U.S.C.A. § 2). The present dispute, however, does not concern the scope or validity of the parties' contract mandating arbitration, but rather, the power of the arbitrator to act in light of evidence of alleged evident partiality.
It is clear that the FAA, while possessing some preemptive force, does not entirely displace state arbitration law. Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488, 499 (1989). As stated previously, in general, the FAA will be found to be preemptive only when state law prevents parties from fully arbitrating their disputes. New England Utilities v. Hydro-Quebec, 10 F.Supp.2d 53, 58-59 (D.Mass.1998) (citing Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)) (preempting Alabama law invalidating pre-dispute agreements to arbitrate) and Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (preempting New York law precluding arbitrators' award of punitive damages).
Under preemption analysis, New Jersey's conflict of interest statute, which is identical in its language to the conflict of interest provision of the FAA, cannot be found to "stand as an obstacle" to the purposes of the FAA and thus to be preempted by it. Volt, supra, 489 U.S. at 477, 109 S.Ct. at 1255, 103 L.Ed.2d at 499 (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941)). Similarly, under choice-of-law principles, no conflict between the two statutes appears. See Erny v. Estate of Merola, 171 N.J. 86, 100, 792 A.2d 1208 (2002) (first prong of the governmental interest test for choice of law is to determine whether an actual conflict between the laws under consideration exists). We will, for that reason, rely on New Jersey precedent, as well as analogous federal decisions, unless a conflict between the two dictates that federal law be followed. Flexible Manufacturing Systems Pty Ltd. v. Super Prods. Corp., 874 F.Supp. 247, 248-49 (E.D.Wisc.1994), aff'd 86 F.3d 96 (7th Cir.1996).
In this dispute, Del Piano bears the burden of proving the existence of evident partiality on the part of Guarino sufficient to vacate the arbitral award. Barcon Associates v. Tri-County Asphalt Corp., 86 N.J. 179, 191, 430 A.2d 214 (1981) (construing New Jersey's Arbitration Act). In Barcon, the court held that the burden could be met by a preponderance of the evidence. Ibid. Merrill Lynch argues on appeal that a clear and convincing standard is applicable. We disagree, finding that standard, with very rare exception, to have been used in published cases only when fraud was allegeda legal theory that traditionally has required an elevated burden of proof to establish. See e.g., Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir.1988); Foster v. Turley, 808 F.2d 38, 42 (10th Cir.1986); Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, *747 1339 (9th Cir.1986); Owen-Williams v. Merrill Lynch, Pierce, Fenner, & Smith, 907 F.Supp. 134, 137 (D.Md.1995), aff'd 103 F.3d 119 (4th Cir.1996). But see Polin v. Kellwood Co., 103 F.Supp.2d 238, 256 (S.D.N.Y.2000) (fraud was partial basis for motion to vacate), aff'd 34 Fed.Appx. 406 (2d Cir.2002); Catz Am. Co. v. Pearl Grange Fruit Exchange, Inc., 292 F.Supp. 549, 552 (S.D.N.Y.1968) (evident partiality).
We recognize that, because of the strong judicial presumption in favor of the validity of an arbitral award, the party seeking to vacate it bears a heavy burden. Our Supreme Court has found thus in a state law context. See Barcon, supra, 86 N.J. at 187, 430 A.2d 214 (citing, among others, Korshalla v. Liberty Mut. Ins. Co., 154 N.J.Super. 235, 240, 381 A.2d 88 (Law Div.1977)) ("every intendment is indulged in favor of the award and it is subject to impeachment only in a clear case"). We also acknowledge that, if a higher burden were uniformly imposed under the FAA, arguments could be marshaled in support of the proposition that we were bound by the FAA's standard, since through its use, fewer awards would be vacated. Nonetheless, we find insufficient evidence that the FAA requires a heightened standard of proof in an "evident partiality" context to require a departure from established New Jersey precedent in this case. Our conclusion in that regard is buttressed by the obvious fact that the Supreme Court, while recognizing the inviolability of arbitral awards except to narrowly defined challenge, has nonetheless maintained the lower standard of proof in this context. In any event, we find that Del Piano has failed to meet even this lesser standard.

II.
This is not a case in which Del Piano has demonstrated that facts known to arbitrator Guarino through his employment should have been disclosed, nor is it one in which there is any evidence of financial gain or other interest either on the part of Guarino or his employers.
Disclosures by Guarino made prior to confirmation of the arbitrators and commencement of the arbitration demonstrated that, at the time of the arbitration, Guarino was employed as a Director and Head of Private Bank Compliance for Deutsche Bank/Bankers Trust Private Banking for the Americas region. From 1997 to 1999, he worked for an affiliated Deutsche Bank investment banking entity, Deutsche Bank Securities, Inc. (DBSI) as Vice President Compliance, conducting that function for DBSI Investment Management and the Deutsche Fund Family, a series of registered mutual funds, in connection with business in the United States, South America and Germany. At the commencement of the hearing, Guarino stated further that he understood that "Deutsche Bank, as a whole, obviously may have done business dealings with Merrill Lynch." He denied any "connection at all with the Analyst's Department at Deutsche Bank." Following these disclosures, counsel for Del Piano raised no objection to the arbitrators, accepted the panel, and the matter proceeded.
At the time of the arbitration, Del Piano had in his possession a copy of the U.S. Purchase Agreement for ICGE, which listed DBSI, Guarino's initial Deutsche Bank employer, as an underwriter of ICGE's initial public offering, along with Merrill Lynch and a number of other investment banking companies. Although Del Piano bases his claim of evident partiality in part on DBSI's status as a co-lead underwriter of the IPO, undisputed evidence discloses that the IPO had been sold at the time that Del Piano entered the market. His claims in no respect relate to the IPO's *748 sale or marketing. The IPO was first publicly offered in September 1999. Guarino left DBSI on January 1, 1999, and in a post-arbitration affidavit, he stated that he had no personal involvement in the offering and had no knowledge of DBSI's role in it until he was contacted by Deutsche Bank compliance on May 5, 2003, after the arbitration award had been made. Guarino stated without contradiction that Deutsche Bank Private Banking, his present employer, was uninvolved in the IPO.
As we stated previously, Del Piano also claimed evident partiality as the result of the New York Attorney General's investigation of the practices of stock analysts in investment banking companies including Deutsche Bank and imposition of fines on those companies found to have violated conflict-of-interest principles. In this regard, Guarino attested in his post-arbitration affidavit that he was uncertain whether he was aware of Attorney General Spitzer's investigations and settlements with investment banking firms at the time of the arbitration in November 2002. However, he stated that any knowledge that he possessed was derived from articles in the Wall Street Journal and the New York Times. Guarino denied all partiality, bias or interest in the arbitration, and none has been demonstrated. Guarino stated further that he was not aware of any effect on his employer that would have resulted from an unfavorable ruling against Merrill Lynch. Again, none has been shown.
We thus find that, contrary to Del Piano's arguments, he has demonstrated no specific connection between Guarino and the subject of the arbitration. Although Guarino's prior employer, DBSI, underwrote the IPO for ICGE, as Del Piano admits, profit to DBSI arose from the underwriting spread between the price paid by it to the issuer, ICGE, and the public offering price. Del Piano has produced no evidence that DBSI maintained a financial interest in the offering once it had been soldan event that occurred prior to Del Piano's purchases. Moreover, in the circumstances, neither the physical proximity of DBSI and Guarino's employer, Deutsche Bank Private Banking nor their corporate affiliation has been demonstrated to provide a factual basis for Del Piano's claim. Further, although Del Piano argued in the arbitration that his losses arose, in part, from alleged stock manipulations by Merrill Lynch's analysts, and although Merrill Lynch incurred substantial fines as the result of that conduct, specifically in connection with ICGE stock, he has not demonstrated that analysts at DBSI acted in concert with those at Merrill Lynch to provide information regarding ICGE to Merrill Lynch's brokerage customers or otherwise acted in a fashion that would relate to his arbitration or his losses. A separate investigation regarding record-keeping violations, upon which Del Piano relies, which resulted in settlements by five broker-dealer companies, has no demonstrated relevance to the present case.
In determining that the arbitrator's decision should be vacated, the motion judge viewed Guarino's disclosures regarding DBSI's involvement in the underwriting of ICGE and as a target of the Spitzer investigations to have been "insufficient" to permit Del Piano to make an informed decision as to whether Guarino would be fair and impartial. We test the motion judge's conclusion under standards articulated by the United States Supreme Court in Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) and by our Supreme Court in Barcon.
In Commonwealth Coatings, the Court held that an arbitration award should be *749 set aside under the FAA when the "supposedly neutral" member of a three-arbitrator panel had failed to disclose that he had conducted business with a party to the arbitration on an irregular, but nonetheless significant and continuing basis, and had rendered services on the construction project that was the subject of the arbitration, despite the lack of evidence of any improper motives on the part of the arbitrator in deciding the case. Arbitrators, like judges, the Court found "not only must be unbiased but also must avoid even the appearance of bias." Id., 393 U.S. at 150, 89 S.Ct. at 340, 21 L. Ed.2d at 305.[2] In Barcon, a party-designated arbitrator had undisclosed dealings with that party for a period of twenty years at the time of his designation as arbitrator, and two transactions were ongoing during the arbitration. In affirming the vacation of the arbitral award, the Court adopted the holding of the Supreme Court in Commonwealth Coatings that arbitrators must "avoid not only actual partiality but also the appearance of partiality." Barcon, supra, 86 N.J. at 189, 430 A.2d 214. To do so, the Court established rules of disclosure to be made prior to any arbitration:
[T]his disclosure should reveal any relationship or transaction that [the potential arbitrator] has had with the parties or their representatives as well as any other fact which would suggest to a reasonable person that the arbitrator is interested in the outcome of the arbitration or which might reasonably support an inference of partiality.
* * *
When a relevant fact is not disclosed at the outset of the proceedings and the award is later challenged, the reviewing court may vacate the award if it concludes that the undisclosed fact would have been such as to lead a reasonable person to object to the designation of the arbitrator in question. There need not be evidence that the arbitrator was actually biased.
[Id. at 193, 195, 430 A.2d 214.]
Our description of Commonwealth Coatings and Barcon demonstrates that each Court was concerned with the effect of a failure to disclose actual dealings between the arbitrator and a party in circumstances in which evidence of bias did not appear in the proceedings or in the award. It was in that context that the Courts' standard of "appearance of bias" arose. In the present case, no evidence of such actual but undisclosed dealings by Guarino has been demonstrated, nor is there evidence that Guarino was aware of any dealings between a Deutsche Bank entity and Merrill Lynch that would have created an appearance of bias. Thus, for Del Piano to prevail, assuming for the moment that the disclosures that Del Piano now seeks were relevant, the "appearance of bias" standard must be stretched from one requiring a duty to disclose to one including a duty to investigate.
Although it is not binding upon us in this case, the New Jersey Arbitration Act enacted in 2000 establishes a duty of reasonable *750 inquiry in N.J.S.A. 2A:23B-12a, which provides:
Before accepting appointment, an individual who is requested to serve as an arbitrator, after making a reasonable inquiry, shall disclose to all parties to the agreement to arbitrate and [sic] arbitration proceeding and to any other arbitrators any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding, including:
(1) a financial or personal interest in the outcome of the arbitration proceeding; and
(2) an existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, a witness, or other arbitrators.
[Emphasis supplied.]
The language in the New Jersey Act is identical to that contained in the Uniform Act of 2000. See Uniform Arbitration Act (U.L.A.) § 12(a). Each act permits an award to be vacated if the mandated disclosure is not made. See N.J.S.A. 2A:23B-12d ("If the arbitrator did not disclose a fact as required by subsection a. or b. of this section, upon timely objection by a party, the court ... may vacate an award.") (emphasis supplied); Uniform Arbitration Act § 12(d). A similar duty of reasonable inquiry existed under the NASD Code of Arbitration Procedure at the time of the arbitration at issue. See id. § 10312(b) (1996) ("Persons who are requested to accept appointment as arbitrators must make a reasonable effort to inform themselves of any interests, relationships or circumstances described in paragraph (a) above.").
A Comment to the Uniform Arbitration Act describes "reasonable inquiry" as follows:
Section 12(a) requires an arbitrator to make a "reasonable inquiry" prior to accepting an appointment as to any potential conflict of interests. The extent of this inquiry may depend upon the circumstances of the situation and the custom in the particular industry. For instance, an attorney in a law firm may be required to check with other attorneys in the firm to determine if acceptance of an appointment as an arbitrator would result in a conflict of interest on the part of that attorney because of representation by an attorney in the same law firm of one of the parties in another matter.
Once an arbitrator has made a "reasonable inquiry" as required by Section 12(a) the arbitrator will be required to disclose only "known facts" that might affect impartiality. The term "knowledge" (which is intended to include "known") is defined in Section 1(4) to mean "actual knowledge."
We see no principled grounds for a determination that a duty of reasonable inquiry should be inapplicable in this case, particularly in light of the fact that it was imposed by the NASD, the very body before which this arbitration proceeded. Even positing a duty of reasonable inquiry, we are satisfied, nonetheless, that the motion judge's order should be reversed. In our judgment, no reasonable person would regard the fact that DBSI participated in underwriting ICGE's sold-out IPO or that DBSI was fined as the result of the conduct of some of its analysts to be relevant to whether Del Piano was somehow misled or mis-advised by employees of Merrill Lynch in connection with his purchases of ICGE shares.[3] If a connection exists, we *751 have not been advised of it. In this regard, we hold that interest or bias must be "direct, definite, and capable of reasonable demonstration, rather than remote or speculative." See, e.g., NASD Code of arbitration § 10312(d)(3). We find only speculation to support Del Piano's claim here.
As a consequence, we find that the motion judge erred in vacating the arbitrators' decision on grounds of evident partiality, and we reverse and remand this matter to the trial court for entry of an order confirming the arbitration award and dismissing Del Piano's complaint.
Reversed and remanded.
NOTES
[1] New Jersey's Arbitration Act was amended, effective January 1, 2003. See N.J.S.A. 2A:23B-1 to -32. The present act is a modified version of the Uniform Arbitration Act of 2000 as proposed by the National Conference of Commissioners on Uniform State Laws. See Assembly Judiciary Committee Statement, Senate, No. 514L.2003, c. 95. The new act retains the prior act's "evident partiality" language. N.J.S.A. 2A:23B-23. However, it contains detailed disclosure and conflict of interest provisions that were previously statutorily unexpressed. See N.J.S.A. 2A:23B-11 and -12.
[2] Justice Black, writing for a four-member plurality, found that disclosure of "any dealings that might create an impression of possible bias" or creating "even an appearance of bias" could constitute "evident partiality" permitting vacation of the award. 393 U.S. at 149-50, 89 S.Ct. at 339-40, 21 L.Ed.2d at 305. Justice White, joined by Justice Marshall, would require only a disclosure of "a substantial interest in a firm which has done more than trivial business with a party." 393 U.S. at 151-52, 89 S.Ct. at 340-41, 21 L.Ed.2d at 306. In dissent, the remaining three justices would have held that an arbitrator's failure to disclose certain relationships raised a rebuttable presumption of partiality. 393 U.S. at 154, 89 S.Ct. at 342, 21 L.Ed.2d at 307.
[3] No other business relationship between the Deutsche Bank entities and Merrill Lynch has been cited as a basis for a claim of evident partiality. Without greater specificity, we decline to find the fact that the companies did business together sufficient to disqualify an industry arbitrator such as Guarino.