**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3496-19

ENGLEWOOD PBA
LOCAL 216
(SUPERIOR OFFICERS
ASSOCIATION),

     Plaintiff-Appellant,

v.

CITY OF ENGLEWOOD,

     Defendant-Respondent.

_____

Argued October 20, 2021 – Decided November 30, 2021

Before Judges Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000017-20.

Michael A. Bukosky argued the cause for appellant (Loccke, Correia & Bukosky, attorneys; Michael A. Bukosky and Corey M. Sargeant, of counsel and on the briefs).

Joseph M. Hannon argued the cause for respondent (Genova Burns LLC, attorneys; Joseph M. Hannon, of counsel and on the brief; Mohamed Barry, on the brief).

PER CURIAM

Plaintiff appeals from the trial court's April 22, 2020 order granting defendant's motion to confirm the arbitration award and dismissing the complaint. We affirm.

Plaintiff filed a grievance regarding the terms of the collective negotiations agreement (agreement), contending its members were entitled to back pay and future payments for missed meals and coffee breaks. After the grievance was denied, plaintiff filed for arbitration, presenting two issues: (1) whether, under the agreement, defendant was required to compensate plaintiff's members when they missed a meal or coffee break; and (2) whether there was an established past practice of defendant compensating plaintiff's members for those missed breaks.

The parties' dispute centers around the language contained in Article VI Section 6.2 of the agreement, which states:

> (a) Each Member shall receive with pay within each daily tour, one (1) fifteen (15) minute coffee break and, one (1) hour meal break . . . .
>
> . . . .

A-3496-19

(c) A Member shall not be entitled to receive pay in lieu of said coffee or meal breaks whether such breaks are missed either voluntarily or because of the exigencies of his/her paid daily tour.

The arbitrator found the language was "clear in its intent" that plaintiff's "member[s] shall not be entitled to receive compensatory pay if such [breaks] are missed" and, providing compensation to the members "would be tantamount to [paying them] twice for the same period."

In turning to the second issue, the arbitrator noted that, to support its contention of a past practice, plaintiff presented a retired police chief who testified that during his command, if a supervising officer could not take their break, the officer was compensated even if the cause was not due to an urgent or emergency nature.

However, plaintiff's representative, a superior officer, conceded that a supervising officer often left the duty desk for various reasons. When that occurred, the officers took their radio with them. The officer testified he would have a patrol officer sit at the desk when the supervising officer had to step away. And if he was working at a different area in the building other than the duty desk, he could eat a meal there. Both of plaintiff's supervisor officer witnesses conceded they had assigned a duty officer to cover the front desk when they took a voluntary break.

3

Defendant produced a police sergeant who testified he was asked to cover the front desk when he was a patrol officer. And the current Chief of Police stated the use of patrol officers to cover the front desk had been in place during all of his years in the department and continued during his tenure as chief.

In response to this testimony, plaintiff contended that the assignment of a lower ranked officer to cover the front desk during a supervising officer's break violated departmental regulations. Plaintiff asserts he urged the arbitrator to consider and resolve this issue.

The arbitrator found plaintiff had not established a past practice to require defendant to compensate plaintiff's members for missed meal or coffee breaks. He stated that although "retired Chief O'Keefe did admit that he paid some officers for missing their break period it did not constitute enough to establish it as a past practice" because the custom was not "clear and consistent." The arbitrator stated:

> Nothing in [plaintiff's representatives'] testimony established that paying for missed breaks was a consistent procedure. To be a past-practice the procedure must be universally acceptable by both sides of the argument and constitute a long-standing practice. Nothing in the . . . testimony established that payment for missed breaks was a longstanding and frequent practice.

4

The arbitrator concluded that defendant was not in violation of the agreement and had not ignored any established past practices. The arbitrator added:

> Finally, the concerns of [plaintiff] regarding the liability of using non-supervisory officers are recognized by this arbitrator. However, given that the Chief of the department has endorsed the practice, there should be no liability to a superior officer utilizing a patrol officer at the duty desk. If the concern continues then the issue should be discussed with department management and memorialized in writing if or when an agreeable position and language could be reached.

The grievances were denied.

After plaintiff moved to vacate the award in the trial court, defendant moved to confirm the arbitrator's decision and award. In an oral decision issued April 22, 2020, the Chancery judge described the language in Article VI Section 6.2 of the agreement as "clear." He found the arbitrator's interpretation of the agreement was reasonable in finding plaintiff's members were compensated for their breaks and would in fact be paid twice if they received any additional compensation.

In reviewing the arbitrator's decision regarding plaintiff's allegation of a past practice of compensation, the Chancery judge noted the various officers' testimony stating it had been a routine practice for "decades" that patrol officers

would cover the front desk during a superior officer's break time.  Therefore, the court found it was "certainly reasonably debatable that [plaintiff] failed to establish" a past practice.  To the contrary, plaintiff's officers concurred that a past practice existed in which a patrol officer would cover the front desk while a superior officer took a break.

The court also addressed plaintiff's argument regarding the "liability" issue, stating:

> this issue of – liability I think is a red herring, that was not before this arbitrator.  Whether somebody sitting at the – front desk and answering phones and greeting visitors would be subject to liability is really not before this [c]ourt . . . .  [I]t's not for me to decide.  I don't think it's for the arbitrator to decide.

The court concluded that the issue regarding the assignment of a patrol officer to a front desk was not submitted to the arbitrator.

Because the judge found plaintiff had not demonstrated any grounds to overturn the arbitration award, he granted the motion to confirm the award and dismissed the complaint.

On appeal, plaintiff asserts: (1) the arbitration was legally defective on its face; (2) the arbitrator exceeded his authority; (3) the court erred in finding plaintiff had not established a past practice; and (4) the court erred in not ruling on the "liability" issue.

6

When reviewing an arbitration award, a court "does so mindful of the fact that the arbitrator's interpretation of the contract controls." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013). Our review "of an arbitrator's interpretation is confined to determining whether the interpretation of the contractual language is 'reasonably debatable.'" N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 553-54 (2006) (quoting State v. Int'l Fed'n of Pro. & Tech. Eng'rs, Local 195, 169 N.J. 505, 513 (2001)). Under the reasonably debatable standard, "a reviewing court may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation." Id. at 554.

There is a "strong judicial presumption in favor of the validity of an arbitral award" and, therefore, "the party seeking to vacate it bears a heavy burden." Del Piano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 372 N.J. Super. 503, 510 (App. Div. 2004). "[A]rbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators . . . . If the arbitrators decide a matter not even submitted to them, that matter can be excluded from the award." Tretina Printing, Inc. v. Fitzpatrick Assocs., Inc., 135 N.J. 349, 358 (1994).

Under N.J.S.A. 2A:24-8, a court shall vacate an arbitration award:

a. Where the award was procured by corruption, fraud, or undue means;

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

Against that backdrop, we turn to plaintiff's assertions.

Initially, plaintiff contends the award was defective because it was not notarized. In addressing the issue, the Chancery judge stated:

I don't see anything . . . requiring [notarization]. So, as a result I think it's clear to this [c]ourt that the arbitrator considered the witnesses' testimony, . . . carefully reviewed the agreement, whatever else was presented, the briefs, and made a decision. Didn't exceed his authority . . . in doing so. There was clear and unambiguous language . . . in the parties' agreement. And an arbitrator's determination of a legal issue should be sustained as long as it's reasonably debatable.

Plaintiff has not presented any case law to support its contention that the failure to notarize the arbitration award is a fatal defect requiring vacating the award. Nonetheless, even if such a requirement existed, we are satisfied the

failure to attach a notarization is only a procedural defect that would not warrant the vacating of an award. See Melvin P. Windsor, Inc. v. Mayflower Sav. & Loan Ass'n,115 N.J. Super. 219, 221 (App. Div. 1971) (finding errors, including the omission of a signature, that did not reflect upon the arbitrator's decision were technical in nature and did not warrant vacating an arbitration award).

We turn to plaintiff's contention that the Chancery judge mistakenly concluded the arbitrator did not err in finding plaintiff did not establish a past practice.

In his review of the arbitrator's decision, the Chancery judge noted the arbitrator considered the witnesses' testimony and language of the agreement and found that the arbitrator's decision regarding a past practice was reasonably debatable. In analyzing the testimony, the court found the arbitrator correctly decided that a different past practice had been established: when a second superior officer was not available to cover a superior officer's break, a patrolman would step in—allowing the superior officer to take his compensated break. Several officers testified to this. Plaintiff only produced one witness to support its allegations of a different practice—the former chief of police who testified that he sometimes paid officers for a missed meal or coffee break. We are

9

satisfied the evidence supported the Chancery judge's finding that the arbitrator's interpretation of the past practice clause was reasonably debatable.

We are also unpersuaded by plaintiff's contentions regarding the "liability" issue. Plaintiff asserts there was a great deal of discussion about the current procedure of having a patrolman cover the front desk while a superior office takes a break. While that may be so, the testimony came in the context of whether plaintiff had demonstrated a past practice existed of compensation for missed breaks. The parties and arbitrator were clear on the two issues presented to the arbitrator for resolution. Whether the existing practice violated departmental policy was not one of those issues.

The Chancery judge found the issue was not presented to the arbitrator. In considering whether an arbitrator had the authority to decide a certain issue, our Supreme Court stated in <u>Grover v. Universal Underwriters Ins. Co.</u>,

> The answer is found simply by analyzing what the parties have agreed should be submitted to arbitration. In the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute. Subsumed in this principle is the proposition that only those issues may be arbitrated which the parties have agreed shall be. Stated another way, the arbitrator's authority is circumscribed by whatever provisions and conditions have been mutually agreed upon. Any action taken beyond that authority is impeachable.

[80 N.J. 221, 228-29 (1979).]

The issue of the superior officer's liability was not before the arbitrator. Therefore, the Chancery judge did not err in concluding the arbitrator did not exceed his power in failing to resolve the matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3496-19