**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3557-22

CITY OF PLAINFIELD,

    Petitioner-Appellant,

v.

FMBA LOCAL 7,

    Respondent-Respondent.

_____

> Argued May 20, 2024 – Decided July 11, 2024
>
> Before Judges Gilson, Berdote Byrne, and Bishop-Thompson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1177-23.
>
> Kathryn V. Hatfield argued the cause for appellant (Hatfield Schwartz Law Group, LLC, attorneys; Kathryn V. Hatfield, of counsel and on the briefs).
>
> Stephen B. Hunter argued the cause for respondent (Detzky, Hunter & DeFillippo, LLC, attorneys; Stephen B. Hunter, of counsel and on the brief).

PER CURIAM

This appeal arises out of a dispute between the City of Plainfield (the City) and Plainfield FMBA Local 7 (the Union), which represents the City's fire personnel, excluding Fire Officers. In 2019, the City sought to collect from certain retirees a percentage of the costs of their healthcare insurance premiums. The Union objected, contending that under the governing collective negotiations agreement, the City had agreed to pay those costs at "its sole expense."

The dispute was arbitrated, and the arbitrator ruled in favor of the Union. The City now appeals from a Law Division order denying its application to vacate the arbitration award and, instead, confirming the award. Discerning no basis to disturb the arbitrator's award, we affirm.

I.

The City is a civil service municipality that maintains its own professional fire department. The Union is the exclusive representative for the City's fire personnel, except for Fire Officers. Effective January 1, 2018 through December 31, 2021, the City and Union were parties to a collective negotiations agreement (the 2018 CN Agreement). Article 13.7B of the 2018 CN Agreement stated that the City would provide health insurance coverage for retirees with twenty-five years or more of service at "its sole expense." Specifically, that article stated:

The City agrees at its sole expense to continue the health insurance coverage for employee, spouse and eligible dependents for those employees who retire, as such retirement is based upon [twenty-five] years or more of credited service in their pension system (except those who elect a deferred retirement) or disability retirement regardless of years of service. Said health insurance coverage shall be the same coverage as provided to City employees.

On April 17, 2019, the City sent a letter to the Union, stating that the City had mistakenly failed to comply with L. 2011, c. 78 (Chapter 78) and had not collected a percentage of the costs for certain retirees' health insurance as required by Chapter 78. The City explained that "at this time" it would not seek to collect the money owed for prior years. Instead, the City announced that beginning July 1, 2019, it would bill certain retirees for their contributions to their health insurance costs. In that regard, the City explained that the Chapter 78 contribution requirements did not apply to retirees who had twenty years or more of service as of June 28, 2011. Therefore, the City stated it would collect the contributions from retirees who had less than twenty years of service as of June 28, 2011. In addition, the City stated that it would "phase in the amount retirees will owe" over a year and a half between July 2019 and January 2021.

3

In May 2019, the City sent letters directly to the affected retirees. Those letters repeated the positions the City had set forth in its April 17, 2019 letter to the Union.

In June 2019, the Union filed a grievance with the City, alleging that the City had unilaterally changed the terms and conditions of the 2018 CN Agreement regarding retirees with twenty-five or more years of service and, thereby, breached the 2018 CN Agreement. The grievance asserted that the 2018 CN Agreement expressly stated that the City would cover the entire cost of the retirees' health insurance. The Union also alleged that "[t]hroughout the duration and expiration of Chapter 78[,] the City continued to pay 100 percent of [the] health care premium[s]" for all retirees and that the City had continued to pay those costs after entering into the 2018 CN Agreement.

The City denied the grievance, and the Union requested arbitration. Thereafter, the Public Employment Relations Commission appointed an arbitrator to resolve the dispute.

The arbitrator held a one-day hearing on December 16, 2021, during which one witness testified: Mark Ruderman, the City's former labor counsel. Thereafter, the City and Union submitted post-hearing briefs.

On March 6, 2023, the arbitrator issued a written decision and award in favor of the Union. The arbitrator found that the City and the Union had negotiated Article 13.7B in the 2018 CN Agreement. In that regard, the arbitrator noted that during the contract negotiations leading to the 2018 CN Agreement, the Union had sent the City a proposal with certain proposed changes to the prior collective negotiations agreement. The proposal did not change Article 13.7B; rather, the proposal stated: "All other provisions of the contract remain unchanged." The arbitrator also found that the City had sent Patrice Dawkins, an insurance broker, "to discuss the insurance proposal" with representatives of the Union. Based on those facts, the arbitrator concluded that the City and Union had negotiated Article 13.7B and had, thereby, agreed to leave the language stating that the City would be responsible for paying retirees insurance premium costs at "its sole expense."

The arbitrator then reviewed Chapter 78 and the related statute N.J.S.A. 40A:10-23. Focusing on the effective date of N.J.S.A. 40A:10-23, which was May 21, 2010, the arbitrator construed the statutory provision to mean that only retirees hired after May 21, 2010, had to pay a percentage of their healthcare costs. The arbitrator then held that (1) any retiree who had been hired before May 21, 2010, and had twenty years or more of service did not have to pay for

5

health insurance; (2) those qualified retirees had to be reimbursed for any payment or deduction taken by the City for health insurance costs; and (3) any current or future retirees hired after May 21, 2010 had to pay the health insurance costs based on Chapter 78.[1] The arbitrator also modified Article 13.7B of the 2018 CN Agreement to comply with N.J.S.A. 40A:10-21.2. Specifically, the arbitrator deleted the "sole expense" language from Article 13.7B.

After the arbitrator issued his award, the City filed a summary action under Rule 4:67-1(a) in the Law Division, seeking to vacate the award. The City argued that the arbitration award was procured by undue means because there was no evidence supporting the arbitrator's finding that the City and Union had negotiated Article 13.7B. The City also argued that the arbitrator had been biased and partial towards the Union.

On June 21, 2023, after hearing argument on the matter, the Law Division issued an order and letter opinion denying the City's application and confirming the arbitration award. The court found that there was "sufficient evidence to

---

[1] In his written decision, the arbitrator sometimes used the date "May 10, 2010" and other times used the date "May 21, 2010." The correct effective date for L. 2010, c. 2 is May 21, 2010. The arbitrator also did not identify the specific percentage that retirees hired after May 21, 2010, would have to pay for health insurance.

establish that the [a]rbitrator's interpretation of the [2018 CN Agreement] contract language [was] reasonably debatable" and that the court, therefore, was required under its standard of review to confirm the arbitration award. In that regard, the court found that the arbitrator had "made a reasonable determination that [the City] engaged in contract negotiations regarding Chapter 78 contributions. Specifically, [the Union]—in its written contract proposals— stated that [Article 13.7B] of the [2018 CN Agreement] would remain unchanged." Therefore, the court reasoned that the arbitrator's finding that the City "could have modified the [2018 CN Agreement's] contract language to relieve [the City] of [its] contractual obligation in response to [the Union's] proposal" was reasonably debatable. Additionally, the court rejected the City's argument that the arbitrator had evidenced bias in favor of the Union.

The City now appeals from the Law Division's June 21, 2023 order denying the City's application and confirming the arbitration award.

II.

A court's review of an arbitration award is limited. Strickland v. Foulke Mgmt. Corp., 475 N.J. Super. 27, 38 (App. Div. 2023). "Arbitration is a favored form of dispute resolution, whose usefulness for labor-management issues is well-recognized" in New Jersey. Borough of Carteret v. Firefighters Mut.

7

Benevolent Ass'n, Loc. 67, 247 N.J. 202, 211 (2021) (quoting Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013)).  So, reviewing courts "'must give arbitration awards "considerable deference."'" Strickland, 475 N.J. Super. at 38 (quoting Firefighters Mut. Benevolent Ass'n, 247 N.J. at 211).  "The interpretation of a labor agreement 'is a question for the arbitrator. . . . [S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling [the arbitrator]' based solely on differences of interpretation."  Firefighters Mut. Benevolent Ass'n, 247 N.J. at 211 (quoting E. Rutherford PBA, 213 N.J. at 202).

In the public sector, "'an arbitrator's award will be confirmed "so long as the award is reasonably debatable."'"  Policemen's Benevolent Ass'n v. City of Trenton, 205 N.J. 422, 429 (2011) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)).  An award is "reasonably debatable" if it is "'justifiable'" or "'fully supportable in the record.'"  Id. at 431 (quoting Kearny PBA Loc. # 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). "If the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted."  Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996).

The same deferential standard of review applies to an arbitrator's interpretation of a statute. See E. Rutherford PBA, 213 N.J. at 207 (applying the "reasonably debatable" standard to an arbitrator's analysis of a statutory provision and explaining that the "framework for reviewing a public-sector arbitration award accounts for the interplay between [a statutory scheme] and [a contract] by requiring a reviewing court to determine whether the arbitration award actually causes direct contradiction with law or public policy"). Accordingly, if an arbitrator's interpretation of a statute is reasonably debatable, a court must defer to the arbitrator's determination. See ibid.

Consistent with that deferential standard, N.J.S.A. 2A:24-8 sets forth specific and limited grounds for vacating an arbitration award related to a collective negotiations agreement. In that regard, N.J.S.A. 2A:24-8 states that an award shall be vacated:

> a.      Where the award was procured by corruption, fraud or undue means;
>
> b.      Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c.      Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

    d.      Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

A trial court's decision to confirm an arbitration award is a conclusion of law, which we review de novo. Pami Realty, LLC v. Locations XIX Inc., 468 N.J. Super. 546, 556 (App. Div. 2021). Similarly, we "review the trial court's decision on a motion to vacate an arbitration award de novo." Yarborough v. State Operated Sch. Dist. of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013)). We are bound to accept the trial court's factual findings unless "clearly erroneous." Del Piano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 372 N.J. Super. 503, 507 (App. Div. 2004) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995)).

III.

On appeal, the City makes two arguments in support of its contention that the arbitration award should be vacated. First, it contends that the arbitration award was "procured by undue means" because it was based on the arbitrator's unsupported finding that the parties negotiated Article 13.7B of the 2018 CN Agreement. Second, the City asserts that the arbitration award was "the product

of the [a]rbitrator's partiality, or . . . appearance of partiality, towards the [Union]."

A.    The Alleged Undue Means.

To put the City's undue means argument in context, it is helpful to review the statutes governing public employees' contributions to healthcare costs after retirement, including Chapter 78.

Effective May 21, 2010, the Legislature amended N.J.S.A. 40A:10-23 to require retired public employees to pay "1.5 percent of the retiree's monthly retirement allowance" for healthcare benefits.  L. 2010, c. 2, § 15 (codified at N.J.S.A. 40A:10-23).  The following year, Chapter 78 was enacted and became effective on June 28, 2011.  Chapter 78 required public employees and retired public employees to pay a portion of their health insurance costs.  See N.J.S.A. 40A:10-21.1.  Those costs were phased in over four years, increasing twenty-five percent each year and reaching the full contribution amount in the fourth year.  N.J.S.A. 40A:10-21.1(a).  In that regard, Chapter 78 required public employees "to achieve full implementation of the increased contribution (Tier 4) in the fourth year after the statute's effective date or, for employees already subject to a collective negotiations agreement[,] . . . in the fourth year after the expiration of that agreement."  In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 5

11

(citing N.J.S.A. 18A:16-17.1) (explaining the analogous provision for local board of education employees); N.J.S.A. 52:14-17.28d(c).

Public employees with twenty years of service as of June 28, 2011, were exempt from Chapter 78's contribution requirements. N.J.S.A. 40A:10-21.1(b)(3). Regarding retired public employees, Chapter 78 required that they pay at least 1.5 percent of their monthly retirement allowances for health insurance. Ibid. The law also provided, however, that retirees would not be required to pay that 1.5 percent twice. In that regard, Chapter 78 states:

> The amount payable by a retiree under this subsection shall not under any circumstance be less than the 1.5 percent of the monthly retirement allowance, including any future cost of living adjustments thereto, that is provided for such a retiree, if appliable to that retiree, under subsection b. of N.J.S.A. 40A:10-23. A retiree who pays the contribution required under this subsection shall not also be required to pay the contribution of 1.5 percent of the monthly retirement allowance under subsection b. of N.J.S.A. 40A:10-23.
>
> [Ibid. (citations reformatted).]

After the four years of full implementation, Chapter 78 allowed unions and local governments to negotiate the percentage of contributions public employees or retirees would pay towards healthcare costs. N.J.S.A. 40A:10-21.2. In that regard, the statute stated that once public employees in a union had reached the full contribution amount, the contribution levels "shall become part

of the parties' collective negotiations and shall then be subject to collective negotiations in a manner similar to other negotiable items between the parties." Ibid. In other words, after 2015, unions representing public employees could negotiate levels of contributions that differed from the levels mandated in Chapter 78 after the full contribution amount had been reached. If, however, the union and the local government entity did not agree to a different contribution amount, the contribution level would remain at the mandated Chapter 78 full contribution level. See ibid.

It is undisputed that by the time the City and Union negotiated the 2018 CN Agreement, Chapter 78 should have been fully implemented. Consequently, under Chapter 78, the parties were allowed to negotiate new contribution amounts. The City argues that the arbitration award was procured by undue means because the arbitrator made a mistake in finding that the parties had negotiated Article 13.7B in the 2018 CN Agreement. Relying on Ruderman's testimony, the City contends that the parties did not negotiate that provision. So, the City argues that the status quo of the prior collective negotiations agreement was that Chapter 78 had to be deemed to be fully implemented and, therefore, Union members should continue to pay the full contributions under Chapter 78.

13

The arbitrator rejected the City's position. Instead, the arbitrator found that the Union had sent proposals during the contract negotiations concerning the 2018 CN Agreement. The arbitrator also found that Dawkins met with Union representatives and discussed those proposals and, therefore, the proposal not to change Article 13.7B was effectively part of the negotiations. Based on those facts, the arbitrator found that the parties negotiated Article 13.7B in the 2018 CN Agreement. Those findings by the arbitrator were not mistakes of fact; rather, they were findings of fact that are supported by the record. The City simply disagrees with the arbitrator's findings. That disagreement, however, is not a ground on which we can vacate an arbitration award. See N.J.S.A. 2A:24-8.

More to the point, the arbitrator's findings are at a minimum reasonably debatable. The arbitrator construed the 2018 CN Agreement in light of Chapter 78 and N.J.S.A. 40A:10-23. Focusing specifically on the effective date of N.J.S.A. 40A:10-23, the arbitrator held that all retirees hired before May 21, 2010, who had at least twenty years or more of service in a state or locally-administered retirement system did not have to pay for health insurance. The arbitrator also held that retirees who were hired after May 21, 2010, must pay for health insurance based on Chapter 78's tiered system. Those holdings are

reasonably debatable and, therefore, we discern no basis to disturb the arbitrator's award.

The City also contends that the arbitrator's award in this matter was inconsistent with an arbitration award relating to a collective negotiations agreement governing the Fire Officers' union (the PFOA). The arbitrator, however, distinguished the PFOA award by pointing out that the arbitrator in that matter found that the City and the PFOA had not negotiated the costs of health insurance for retirees. That distinction by the arbitrator is reasonable, and we discern no basis to disagree with the arbitrator. Therefore, we discern no basis to vacate the arbitrator's award in this matter.

Finally, we point out the limit of the holding in this matter. The arbitrator was not asked to, and did not, address whether the City could recover the costs that should have been paid under Chapter 78 during the mandatory four-year implementation of Chapter 78. In its letters to the Union and retirees, the City represented that it had failed to collect or deduct from retirees the required contributions under Chapter 78. In that regard, the Union made a similar representation in its grievance, noting that contributions from retirees had not been taken after Chapter 78 was enacted. Given the City's and Union's representations, we assume that the City failed to properly implement Chapter

78 during its mandatory four-year period. Whether the City can now recover those contributions is not an issue presented to us on this appeal, and we express no view on that issue.

B. The Alleged Partiality.

In its second argument, the City contends that the arbitration award should be vacated because the arbitrator was partial towards the Union. To support that contention, the City points to one statement by the arbitrator: "It certainly appears to me that the City's status quo argument is actually buyers' remorse, which is anathema to the [c]ollective [n]egotiation process."

We reject the City's contention that the one statement by the arbitrator in his written decision establishes partiality or even the appearance of partiality. "The party alleging that an arbitrator was impermissibly biased has the burden of proving that allegation by a preponderance of the evidence introduced concerning [the contention]." Barcon Assocs., Inc. v. Tri-County Asphalt Corp., 86 N.J. 179, 191 (1981). The arbitrator's statement relied on by the City does not demonstrate bias or partiality. Instead, the arbitrator was responding to one of the City's arguments. In that regard, after analyzing the City's "status quo" argument, the arbitrator rejected it. Read in full context, the statement does not demonstrate partiality or even the appearance of partiality.

In summary, having conducted a de novo review, we, like the Law Division, conclude that there are no grounds to vacate the arbitration award in this matter. Accordingly, we affirm the June 21, 2023 Law Division order, which denied the City's application to vacate the arbitrator's award and, instead, confirmed the award.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION